HARTWIN E. BARBER, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Indictment for obtaining goods by false representations as to the prisoner's debts — — debts not specified in, cannot be proved — testimony in supplementary proceedings — when inadmissible.*

An indictment for obtaining goods by false pretences alleged that the accused represented "that he was out of debt, or nearly out of debt, and that he had no debts against him except a few dribbling grocery bills," and then proceeded "whereas in truth and in fact said Hartwin E. Barber was not out of debt and was not nearly out of debt, but was largely in debt and owed large sums of money to divers persons."

*Held,* that upon the trial the prosecution could not prove any specific sums owed by the accused, as none were described or set forth in the indictment.

Upon the trial to prove debts due from the accused, testimony given by him on his examination in proceedings supplementary to execution under the Code, section 292, was admitted.

*Held,* that this was error.

What evidence of ownership of the chattels, obtained by the false representations, is sufficient to sustain the indictment, considered.

WRIT OF ERROR to the Court of Sessions of Allegany, to review a conviction and judgment upon an indictment against the plaintiff in error, charging him with obtaining property by false pretences.

*Daggett & Norton,* for the plaintiff in error.

*C. N. Flanagan,* district attorney, for the defendants in error.

SMITH, J.:

The indictment charged that Barber falsely and knowingly represented to William and Nathan Colegrove, among other things, that "he was out of debt or nearly out of debt, and that he had no debts against him except a few dribbling grocery bills," and thereby induced them to deliver to him five cows belonging to them, of the value of $132.50. The only language in the indictment negativing such representation was the following:

" Whereas, in truth and in fact, said Hartwin E. Barber was not out of debt and was not nearly out of debt, but was largely in debt and owed large sums of money to divers persons," without specifying any indebtedness whatever. At the trial, the prosecuting attorney gave evidence of such misrepresentations. He then offered evidence tending to show that before the making of the alleged representation, a certain judgment had been rendered against Barber in the Supreme Court of this State for over $1,100, and also that he had executed a mortgage upon real estate, which recited that it was given to secure the payment of $530 and interest, according to the condition of a bond given by him of the same date. The counsel for the prisoner objected to the evidence, on the ground that no specific indebtedness was alleged in the indictment. The objection was overruled and the evidence was received, and the counsel for the prisoner duly excepted.

The testimony was inadmissible. The existence of those particular debts not having been charged in the indictment, the prosecution was not entitled to prove them, and the defendant was not required to be prepared to meet them. The case of *The People* v. *Miller* (2 Park. Cr. Cas., 197) is in point. In that case the defendant was indicted for obtaining an indorsement of a note by false pretences. It was charged and proved that the defendant obtained the indorsement by representing, among other things, that all his last year's debts had been settled and paid. Held, by the General Term in the seventh district, that such representations could not be shown to be false by proving a specific indebtedness existing at the time, unless the existence of such specific indebtedness had been alleged in the indictment. WELLES, J., delivering the opinion of the court, said : " It " (the evidence of specific debts) "could only be material by way of contradicting the representation charged and claimed to have been proved, that all the defendant's last year's debts had been settled and paid. If admissible at all, it could only be so, under a proper allegation or averment of the fact. It would be contrary to well-established principles to allow evidence to be given upon a material issue, tending to fasten fraud and falsehood upon the party, without any averment or notice in the indictment, of the fact sought to be proved."

A part of the evidence introduced by the prosecution, to show the existence of specific debts, consisted of the testimony given by the defendant on his examination in proceedings supplementary to execution, pursuant to section 292 of the Code of Procedure. The evidence was objected to on the ground that the testimony of a witness in supplementary proceedings cannot be used against him in a criminal proceeding. The objection was overruled and the defendant excepted. Section 292 provides that " no person shall, on examination pursuant to this chapter, be excused from answering any question, on the ground that his examination will tend to convict him of the commission of a fraud ; but his answer shall not be used as evidence against him in any criminal proceeding or prosecution."

The counsel for the people argues that the last clause of the portion of the statute above quoted only applies where the witness has declined to answer upon the examination, upon the ground that his answer might tend to criminate him ; otherwise, the counsel says, witnesses in supplementary proceedings may testify falsely with impunity, as their testimony could not be used to support a prosecution against them for perjury. The argument proceeds upon a misconception of the statute. Immunity from the consequences of perjury is not secured to the witness, whether he does or does not ask to be excused before testifying. He shall not be excused from answering on the ground that his examination will tend to convict him of a *fraud: i. e.,* of a fraud upon his creditors in respect to his property ; otherwise, the object of the statute, which is to obtain a discovery of his property, would be frustrated. In all other respects, he is entitled to the benefit of the rule, that a witness is not obliged to criminate himself. In the present case, a refusal, on the part of the witness, to answer would have been unavailing, for the obvious reason that his testimony could not have tended to show him guilty of a crime, except, possibly, of a fraudulent disposition of his property, which, according to the statute, would not excuse him from answering. We apprehend that the true meaning of the provision, that the examination of a witness in supplementary proceedings shall not be used against him in any criminal proceeding is, that it shall not be used as evidence of any fact testified to by him on

such examination. If that is the extent of the provision he is liable, like other witnesses, to indictment for perjury, and his testimony, given on the examination, may be shown on the trial of such indictment, not as proof of the facts stated by him, but as evidence of his sworn statements. But whether the opinion last expressed be correct or not, certain it is that the testimony of the witness cannot be used as evidence of a fact stated by him on such examination, and as on the trial of this case, the testimony of the defendant as a witness in the supplementary proceedings was received solely as evidence of certain facts stated by him on such examination, it was directly within the prohibition of the statute and its reception was error.

The counsel for the prisoner insists that the proof did not show that the cows were the property of the Colegroves, as charged in the indictment. It appeared that the Colegroves had originally owned the cows and had sold them to one Watson and had taken back a chattel mortgage on them, to secure purchase-money. Watson had advertised his personal property for sale at public auction, with the consent of the Colegroves, they to select notes realized from the sale in satisfaction of their mortgage. The arrangement was publicly announced to the bidders, and the defendant having bid off four of the cows at the auction, and purchased a fifth cow of the Colegroves, at private sale, his note was one of those selected by the Colegroves. By the representations in question, he induced the Colegroves to accept his note and deliver to him the cows. Upon this state of facts, we think the Colegroves had such an interest in the cows as supports the allegation in the indictment.

It is also insisted that the indictment is fatally defective. It is only necessary to say that although it is not sufficiently specific in its allegations to admit proof that Barber was owing particular debts, it alleges other false representations than those respecting his indebtedness, and is sufficient in all other respects.

For the errors above pointed out, the judgment and conviction must be reversed, and the case remitted to the Court of Sessions of Allegany for a new trial.

TALCOTT, P. J. and HARDIN, J., concurred.

Judgment and conviction reversed, and case remitted to the Court of Sessions of Allegany county, with directions for a new trial.